# THE OPHIR COLLECTION

## PURCHASE AND SALE AGREEMENT
Between

### AFRISTOCKTRADING (PTY) LTD
(BUYER)

and

### BLAKE C. ALSBROOK
(RECEIVER)

and

### TRADE BASE SALES, INC
(SELLER)

and

### GLOBAL TRUST DEPOSITORY
(VAULT OWNER and ESCROW AGENT)

Exhibit _A_ Page _8_

This PURCHASE AND SALE AGREEMENT ("Agreement") is entered into on 20th December, 2019 ("Effective Date") between Afristocktrading (Pty) Ltd, a South African Registered company with registered address at Lakeview Building 1277, Mike Crawford Avenue, Centurion, Pretoria, South Africa ("BUYER"), Trade Base Sales, Inc., an Ohio Corporation ("SELLER"); Blake C. Alsbrook (RECEIVER) and Global Trust Depository, each individually referred to as a "Party" or collectively as the "Parties."

## RECITALS

A. SELLER is an Ohio Corporation in good standing.

B. BUYER is a South African Registered company in good standing.

C. SELLER is the owner of certain gems ("the Ophir Collection"). The Ophir Collection is currently subject to control by a receiver ("the Receiver").

D. RECEIVER, Blake C. Alsbrook, who is not affiliated with either BUYER or SELLER, was appointed Receiver by the United States District Court in the Central District of California ("USDC-CDCA") in cause number 2:19-cv-05299 VAP (JPRx) on December 5, 2019, to take sole custody, possession and control of certain gems ("the Ophir Collection") and to sell them subject to the approval of the Court to protect the interests of certain judgment creditors identified in Article I, Section 2.6(a) of this Agreement. The receiver's interest in the Ophir Collection is limited solely to protecting the interests of the judgment creditors identified in Article I, Section 2.6(a) of this agreement, in the amounts identified therein. Seller retains all other rights to the Ophir Collection, including the right to sell, transfer and receive sales proceeds for the Ophir Collection.

E. VAULT OWNER and ESCROW AGENT is Global Trust Depository. Global Trust Depository has physical possession of the Ophir Collection at its safekeeping facility in Orange County, California. Global Trust Depository will establish an escrow account for the purpose of receiving and distributing certain of the sales proceeds of this Agreement, according to the terms of this agreement.

Initials: *HN* Buyer
 *BR* Seller
 \_\_\_\_ Receiver
 \_\_\_\_ Vault Manager/Escrow Agent

Exhibit *A* Page *9*

The Ophir Collection is being held securely under Safekeeping Receipt number TOC/BR-41818/3.2B are being held at two locations as follows:

F. BUYER has the resources to purchase the Ophir Collection and desires to do so.

G. SELLER and RECEIVER desire to sell the Ophir Collection to BUYER. RECEIVER desires to be paid Thirty Million Dollars ($30,000,000.00) from this transaction to satisfy his duties and obligations to the USDC-CDCA.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants, and agreements of the Parties hereinafter set forth, the Parties agree as follows:

## Article I.
## TERMS OF SALE

1. Commodity: This Agreement concerns the purchase and sale of the Ophir Collection, which is comprised of certain rare and exquisite gemstones, all of which, except one, have been certified by the Gemological Institute of America. (A copy of each gemological certification is attached collectively as Exhibit 1 to the Agreement and is incorporated herein for all purposes.)

2. Procedures

2.1 The Parties acknowledge that the value, nature and quality of the Ophir Collection has been determined by an independent appraisal performed by Lurisha Finger, a Gemological Institute of America certified appraiser. The Parties further acknowledge that neither the Parties, nor the attorneys involved in this transaction, have made any representations whatsoever, other than those made by Lurisha Finger, as to the value, nature or quality of the Ophir Collection as an inducement to enter into this Agreement. Seller represents that the GIA certificates attached to this agreement are true and correct copies of the originals as produced by the certified gemologist and maintained by the GIA.

Initials: _JHN_ Buyer
_RR_ Seller
____ Receiver
____ Vault Manager/Escrow Agent

2.2  SELLER shall, contemporaneously with the signing this Agreement, provide to BUYER, the GIA certificates for the Ophir Collection.

2.3  The Ophir Collection is deposited in the safe keeping facilities identified in Recital "E" above. The Ophir Collection shall remain at those safe keeping facilities until the full payments required by Article I, 2.5(b) and 2.5(e)(i) of this Agreement have been received by RECEIVER and ESCROW AGENT, and all contingencies in this agreement have been satisfied.

2.4  BUYER agrees to pay, and SELLER agrees to accept, Two Hundred and twenty Million Dollars ($220,000,000.00 USD), as the full purchase price for the Ophir Collection ("Purchase Price"). The Purchase Price shall be paid via wire transfer, according to the Payment Schedule required by this agreement, into the Escrow Agent's escrow account at the following coordinates and as per the directions in Schedule A annexed to this Agreement (Page 14):

Bank Name:
Bank ABA/Routing Number:
Bank Address:
Bank Account Name:
Bank Account Number:
Bank Phone:

2.5  Payment Schedule

(a) BUYER shall deposit Two Hundred and Twenty Million Dollars ($220,000,000.00 USD) into the ESCROW AGENT'S escrow account at the coordinates identified in Article I, Section 2.4 of this agreement within seven (7) days of the effective date of this agreement.

(b) ESCROW AGENT agrees to pay, to the RECEIVER, Thirty Million Dollars ($30,000,000.00 USD), from the deposit required by Article I, Section 2.5(a), within twenty-four (24) hours of the funds required by Article I, Section 2.5(a) being available for transfer by the ESCROW AGENT. Notwithstanding any language in this section, all monies paid by BUYER pursuant to this Agreement, including the Thirty

Initials: *H-N* Buyer
         *PM* Seller
         ____ Receiver
         ____ Vault Manager/Escrow Agent

Million Dollars ($30,000,000.00 USD) payment required by this section, shall be refundable To BUYER if any Party, other than BUYER, fails to perform as required by this agreement.

(c) Once the RECEIVER has acknowledged receipt of the payment required by Article I, Section 2.6(b) of this Agreement, RECEIVER shall immediately direct ESCROW AGENT/VAULT MANGER to issue a new Safekeeping Receipt in the name of BUYER. ESCROW AGENT/VAULT MANAGER agrees to immediately issue the new Safekeeping Receipt in the manner required by this section, when directed to do so by RECEIVER.

(d) ESCROW AGENT/VAULT MANAGER shall, simultaneous with the issuance of the Safekeeping Receipt issued pursuant to Article I, Section 2.5(c);

   (i) Distribute One Hundred and sixty nine million dollars ($169,000,000 USD) to SELLER, and/or its designees, in the manner directed by SELLER and

   (ii) ESCROW AGENT shall be entitled to withdraw, and pay itself, One Million Dollars ($1,000,000.00 USD) as payment for fees associated with its duties as ESCROW AGENT. ESCROW AGENT agrees to pay all fees associated with the establishment, existence and maintenance of the escrow account from the fees identified in this section, including any fees charged by JPMorgan Chase Bank, N.A. for the escrow account.

   (iii) Payments falling due under this agreement shall be forwarded to relevant payee beneficiaries coordinates in Schedules attached to this Agreement and being respectively the coordinates of the Receiver, Shadeya International Investment Ltd or its nominees(in respect of

Initials: *H-N* Buyer
         *PH* Seller
         ____ Receiver
         ____ Vault Manager/Escrow Agent

transaction management services, the Seller and/or its nominees or designees and the Escrow Agent

The payments required by this agreement are demonstrated mathematically below:

| | |
|---|---|
| $220,000,000.00 | **Purchase Price** |
| -$30,000,000.00 | **Payment to RECEIVER** |
| -$20,000,000,00 | **Payment to Shadeya International Investment Ltd** |
| -$169,000,000.00 | **Payment to SELLER and/or its designees** |
| -$1,000,000.00 | **Payment to ESCROW AGENT** |
| $0.00 | **Remaining balance in escrow account** |

2.6  Only after the Safekeeping Receipt required by Article I, Section 2.5(e) has been issued, RECEIVER agrees to pay, from the Thirty Million Dollar ($30,000,000.00 USD) payment required by Article I, Section 2.5(b) of this Agreement, the following:

> To Morgan & Morgan, in trust for Sterling Financial & Realty Group, Inc., to satisfy the judgment in Sterling Financial & Realty Group, Inc, et al v. Trade Base Sales, Inc., et al; Case No. 2018-CA-00847-MB-AA, In The Circuit Court of the Fifteenth Judicial Circuit, In and For Palm Beach County, Florida (the "Sterling Matter"), the sum of Nine Million Seven Hundred and Fifty Thousand Dollars ($9,750,000.00;

> To Nelson & Fraenkel LLP, in trust for Ocean Thermal Energy Corporation, to satisfy the judgment in Ocean Thermal Energy Corporation v. Robert Coe, III; Brett M. Regal; David R. Large; Trade Base Sales, Inc; Migration Partners, LLC; Cause No: CV-2:18-mc-00141 [US DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA] (the "OTEC Matter"), the sum of Seventeen Million Five Hundred Thousand Dollars ($17,500,000.00) (minus a $100,000.00 hold back to cover Ocean Thermal Energy Corporation's ("OTEC") portion of the Receivership costs of administration in accordance with section 2.7 below, the remainder of which will be returned to OTEC after full satisfaction of the RECEIVER's court approved Receivership costs of administration, details of the transfer shall be given to RECEIVER at the execution of this agreement; and

Initials: _H-N_ Buyer
          _BM_ Seller
          ____ Receiver
          ____ Vault Manager/Escrow Agent

The RECEIVER has authority to use the remaining portion of the Thirty Million Dollars ($30,000,000.00 USD) for immediate satisfaction of Receivership costs of administration, subject to the subsequent issuance of a court order confirming the Receiver's fees and costs, and will hold the remainder until the Court authorizes their disbursement. Once the Court approves the Receiver's Final Report and Account, and the Receivership costs of administration are paid in full, the RECEIVER shall thereafter disburse the balance of those funds in accordance with the Court's anticipated direction to Trade Base Sales, Inc. payable to the JPMorgan Chase Bank, N.A. IOLTA account of Brooks T. Harrison, an attorney in good standing in the State of Texas.

2.7   SELLER represents that it has reached an agreement with judgment creditor Ocean Thermal Energy Corporation to share equally the fees and expenses of the RECEIVER in this matter.

2.8   BUYER AND SELLER agree that any brokerage fees or commissions arising out of the purchase of the collection that are owed by BUYER will be paid by BUYER, and will be in addition to the Purchase Price. Conversely, any brokerage fees or commissions arising out of the sale of the collection owed by SELLER will be paid by SELLER out of the Purchase Price.

## Article II.
## DISCLOSURE

Each Party acknowledges and agrees that the RECEIVER must disclose this full Agreement to the Court in it its public files in order to seek and obtain the approval and confirmation of the Court for this purchase and sale.

## Article III.
## SELLER'S REPRESENTATIONS AND WARRANTIES

SELLER represents and warrants to BUYER that:

Initials: *H-N* Buyer
  *BH* Seller
  ____ Receiver
  ____ Vault Manager/Escrow Agent

1. <u>Existence and Standing</u>. SELLER is a validly existing corporation in good standing under the laws of State of Ohio and has all requisite authority to enter into this Agreement. The RECEIVER has all requisite authority to enter into this agreement.

2. <u>Authorization and Validity</u>. SELLER has the corporate power and authority and legal right to execute and deliver this Agreement and to perform its obligations thereunder. The execution and delivery by SELLER of this Agreement and the performance of its obligations hereunder have been duly authorized by proper legal proceedings, and this Agreement constitutes a legal, valid and binding obligation of SELLER. Upon the issuance of an Order by the Court approving and confirming this purchase and sale, the RECEIVER and the SELLER have the authority to conclude this purchase and sale.

3. <u>Accuracy of Information</u>. No information, exhibit, or report furnished by SELLER to BUYER in connection with the negotiation or compliance with this Agreement contained any material misstatement or omittance of a material fact or any fact necessary to make the statements contained therein not misleading. RECEIVER has no knowledge of, nor any involvement in providing any information, exhibit or report from or to SELLER or BUYER and hereby makes no representations of anything to any person or entity, other than the RECEIVER will conduct its duties and responsibilities in accordance with the Court's instructions to him as the RECEIVER.

4. <u>Litigation</u>. SELLER warrants that there is no litigation, arbitration, governmental investigation, proceeding or inquiry pending or, to the knowledge of any of their shareholders, directors, officers, members, managers, partners, employees and agents threatened against or affecting SELLER or SELLER's Subsidiary(s) which could have a material adverse effect on SELLER's performance of its obligations under this Agreement or which seeks to prevent, enjoin or delay or the making of this Agreement not identified in this Agreement. SELLER further warrants that, to its knowledge, there are no other claims to ownership of the Ophir Collection which could have a material adverse effect on SELLER's performance of its obligations under this Agreement. SELLER agrees that if, during the performance of this agreement, any claims to ownership of the Ophir Collection arise, SELLER will be financially responsible for effects of those claims from the proceeds SELLER will receive from this sale. SELLER agrees to indemnify BUYER, and to hold BUYER harmless, from any loss or expense that it may sustain or incur as a consequence of unknown claims to ownership of the Ophir Collection that may arise during the performance of this agreement.

Initials: _JHN_ Buyer
        _BIL_ Seller
        _____ Receiver
        _____ Vault Manager/Escrow Agent

5. <u>Ownership of the Ophir Collection</u>. SELLER warrants that it is the true and legal titleholder, subject to the receivership identified herein, of the Ophir Collection, and SELLER is not restrained by law or contract in any regards, other than those imposed by the United States District Court in the Central District of California in cause number 2:19-cv-05299 VAP (JPRx) on July 2, 2019, for the RECEIVER to take sole custody, possession and control of certain gems ("the Ophir Collection") and to sell them subject to the approval of the Court to protect the interests of certain judgment creditors identified in Article I, Section 2.6(a) of this Agreement.

6. As to the Ophir Collection. SELLER represents there are no incumbrances that will prevent or affect the sale of the Ophir Collection within the time frame outlined in this Agreement other than those identified in this agreement. While SELLER is the owner of the Ophir Collection, transfer of title of the Ophir Collection pursuant to this agreement, shall be through the RECEIVER and VAULT MANAGER.

## Article IV.
## BUYER'S REPRESENTATIONS AND WARRANTIES

BUYER represents and warrants to SELLER that:

1. BUYER has power and authority and legal right to execute and deliver this Agreement and to perform its obligations hereunder. The execution and delivery by BUYER of this Agreement and the performance of its obligations hereunder have been duly authorized by proper proceedings, and this Agreement constitutes a legal, valid and binding obligations of BUYER enforceable against BUYER in accordance with its terms.

2. <u>Accuracy of Information</u>. No information, exhibit or report furnished to SELLER by BUYER in connection with the negotiation or compliance with this Agreement contained any material misstatement or omittance of a material fact or any fact necessary to make the statements contained therein not misleading.

3. <u>Litigation</u>. There is no litigation, arbitration, governmental investigation, proceeding or inquiry pending or, to the knowledge of any of their sharcholders, directors, officers, members, managers, partners, employees and agents threatened against or affecting BUYER or BUYER'S subsidiary(s) which could have a material adverse effect on Ss performance of its obligations under this Agreement or which seeks to prevent, enjoin or delay or the making of this Agreement.

Initials: *H-N* Buyer
    *PA* Seller
    ____ Receiver
    ____ Vault Manager/Escrow Agent

Exhibit *A* Page /6

## Article V.
## TERMINATION

This Agreement can only be terminated upon written notice.

## Article VI.
## TAXES

Each Party is solely responsible for its tax obligations to any taxing authority to which the Parties are subject. No Party has relied on any information or representations of another Party concerning any tax liability arising out of this Agreement.

## Article VII.
## MISCELLANEOUS TERMS AND CONDITIONS

1. <u>Entire Agreement/Amendment</u>. This Agreement, and the documents provided by BUYER and SELLER pursuant to this Agreement (i.e. GIA reports, Appraisals and Safe Keeping Receipts), constitutes all of the promises, agreements, conditions, understandings, warranties and representations between the Parties hereto with respect to the transactions contemplated hereby and supersede all prior agreements, arrangements and understandings between the Parties hereto, whether written, oral or otherwise. There are no promises, agreements, conditions, understandings, warranties or representations, oral or written, express or implied, between the Parties hereto concerning the subject matter hereof or thereof except as set forth herein and

therein. No amendment, modification, or alteration to the terms or provisions of this Agreement shall be binding unless such amendment, modification, or alteration is in writing and signed by both Parties.

2. <u>Headings</u>. The headings of the Sections and paragraphs of this Agreement are inserted for convenience only and shall not be deemed to constitute part of this Agreement or to affect the construction hereof.

Initials: *H-N* Buyer
         *BA* Seller
         _____ Receiver
         _____ Vault Manager/Escrow Agent

Exhibit *A* Page *7*

3. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall, for all purposes, be deemed to be an original and all of which shall constitute the same Agreement. To be validly executed, this Agreement may be signed in counterparts by each of the Parties, and then scanned, copied and transmitted via email or facsimile to the other Parties. Scanned, copied and facsimile copies of this agreement shall have the full force and effect as the originals.

4. <u>Severability</u>. Should any clause, sentence, paragraph. subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision shall not have the effect of invalidating or voiding the remainder of this Agreement, and the parties hereto agree that the part or parts of this Agreement so held to be invalid, unenforceable or void shall be deemed to have been stricken and effectiveness as if such stricken part or parts had never been included herein.

5. <u>Waiver</u>. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the Party against whom that waiver is sought to be enforced. No failure or delay on the part of either of the Parties hereto in exercising any right, power or privilege hereunder, and no course of dealing between the Parties hereto, shall operate as a waiver of any right, power or privilege hereunder.

6. <u>Notices</u>. Any notice, request, instruction, or other communication to be given hereunder by any Party hereto to any other Party hereto shall be in writing and delivered by facsimile or electronic mail to:

**TO BUYER:**
Afristocktrading (Pty)
Lakeview Building
1277, Mike Crawford Avenue,
Centurion, Pretoria, South Africa


**TO SELLER:**
Brooks Harrison
11811 North Freeway
Suite 500
Houston, TX 77060


Initials: _H-N_ Buyer
_BH_ Seller
_____ Receiver
_____ Vault Manager/Escrow Agent

Exhibit _A_ Page _18_

**TO RECEIVER:**
Blake C. Alsbrook
1875 Century Park East, Suite 2200
Los Angeles, CA 90067

**TO VAULT MANAGER\ESCOW AGENT:**
Clark Hills
Global Trust Depository
5000 Birch Street, Suite 3000
Newport Beach, CA 92660

7.  <u>Successors and Assigns.</u> No Party hereto may assign or transfer all or any portion of its rights, duties and obligations hereunder without the written consent of the other Parties. Any attempt to do so without written consent of the other Parties is null and void. No assignment by any of the Parties hereto of any of their rights, interests or obligations hereunder shall relieve such Party of its obligations under this Agreement.

8.  <u>Public Announcements.</u> No Party hereto shall issue any such press release or make any public statement, other than the required filings to the Court, without the prior written consent of the other Parties.

9.  <u>Third-Party Beneficiaries.</u> Except for the Parties to this Agreement, there shall exist no right of any person to claim a beneficial interest in this Agreement or any rights occurring by virtue of this Agreement.

10. <u>Governing Law and Venue.</u> This Agreement shall be construed in accordance with and governed by the laws of the State of California without giving effect to the principles of conflicts of law thereof. Any proceedings, claims, actions, or litigation arising from this Agreement shall be brought in the Receivership Court in the Central District of California. ALL PARTIES WAIVE ANY RIGHT THAT THEY MAY HAVE TO A JURY IN CONNECTION WITH ANY SUCH DISPUTE.

11. <u>Attorneys' Fees.</u> In the event of any litigation or arbitration arising out of, or related to, this Agreement, the prevailing Party shall be entitled to recover from the losing Party, all of its costs and expenses incurred in connection with such litigation or arbitration, including court costs and reasonable attorneys' fees, whether or not prosecuted to judgment.

Initials: *JHN* Buyer
         *AL* Seller
         _____ Receiver
         _____ Vault Manager/Escrow Agent

THIS DOCUMENT CONSISTS OF 18 PAGES, INCLUDING COVER PAGE.

AS ACKNOWLEDGED AND AGREED, the Parties have executed this Agreement as of the dates below.

### AUTHORIZED SIGNATURES:

**FOR SELLER**

_____Brett M. Regal_____ Date: 12-24-19
*Brett Regal, on behalf of Trade Base Sales, Inc.*

**FOR BUYER**

*[signature]*

Helen Nels for and on behalf of Afristocktrading (Pty) Ltd and its Partners (Date 12.20 2019

**FOR RECEIVER**

_____ Date:_____
*Blake Alsbrook, in his capacity as Receiver*

**FOR VAULT MANAGER\ESCROW AGENT**

_____ Date:_____
*Clark Hills, on Behalf of Global Trust and Depository*

Initials: *HN* Buyer
         *BM* Seller
         ____ Receiver
         ____ Vault Manager/Escrow Agent

Exhibit A Page 20

## SCHEDULE A

### Receiving Coordinates of the Vault Manager /Escrow Agent

| | |
|---|---|
| Bank Name | |
| Address | |
| Account No. | |
| Account Name | |
| ABA Routing No | |
| Bank Officer/Tel | |
| | <u>Text Message:</u> *Where large payments are to be delivered by S.W.I.F.T. or Clearstream text message covering all remittances shall clearly state the following:*<br><br>"CLEAN, CLEARED, LIEN FREE AND UNENCUMBERED FUNDS TO BE HELD FOR SUBSEQUENT DISBURSEMENT AND EARNED BY OR PAYABLE TO BENEFICIARY IN THE COURSE OFBANKING AND COMMERCIAL TRANSACTIONS OF NON-CRIMINAL AND NON-TERRORIST ORIGINS, FOR SAME DAY SETTLEMENT."<br><br>Pre-ADVICE OR NOTICE OF PAYMENT SHALL REQUIRE TO BE COPIED to: |

Initials: *H-N* Buyer
        *CK* Seller
        _____ Receiver
        _____ Vault Manager/Escrow Agent

## SCHEDULE B
## Co-ordinates of the Receiver

| Bank Name | |
|---|---|
| Branch/ | |
| Address | |
| Account No. | |
| Account Name | |
| SWIFT/BIC | |
| IBAN Code | |
| Branch Sort Code | |
| Bank Officer | |
| Tel | |
| | Text Message: *Where large payments are to be delivered by S.W.I.F.T. or Clearstream text message covering all remittances shall clearly state the following:* <br><br> "CLEAN, CLEARED, LIEN FREE AND UNENCUMBERED FUNDS TO BE HELD FOR SUBSEQUENT DISBURSEMENT AND EARNED BY OR PAYABLE TO THE BENEFICIARY ON BANKING AND COMMERCIAL TRANSACTIONS OF NON-CRIMINAL AND NON-TERRORIST ORIGINS, FOR SAME DAY SETTLEMENT." <br><br> Pre-ADVICE OR NOTICE OF PAYMENT SHALL REQUIRE TO BE COPIED to <br><br> Name Blake Alsbrook (Receiver) <br> Email |

Initials: *H-N* Buyer
   *βn* Seller
   _____ Receiver
   _____ Vault Manager/Escrow Agent

Exhibit *A* Page 22

### Schedule C -
### Coordinates of the Buyer

| | |
|---|---|
| Bank Name | |
| Branch/ Address | |
| Account No. | |
| Account Name | |
| SWIFT/BIC | |
| IBAN Code | |
| Branch Sort Code | |
| Bank Officer | |
| Tel | |
| | Text Message: *Where large payments are to be delivered by S.W.I.F.T. or Clearstream text message covering all remittances shall clearly state the following:*<br><br>"CLEAN, CLEARED, LIEN FREE AND UNENCUMBERED FUNDS TO BE HELD FOR SUBSEQUENT DISBURSEMENT AND EARNED BY OR PAYABLE TO BENEFICIARIES ON BANKING AND COMMERCIAL TRANSACTIONS OF NON-CRIMINAL AND NON-TERRORIST ORIGINS, FOR SAME DAY SETTLEMENT."<br><br>Pre-ADVICE OR NOTICE OF PAYMENT SHALL REQUIRE TO BE COPIED to<br>Name<br>Email<br><br>Name<br>Email |

Initials: *H-N* Buyer
     *Ati* Seller
     _____ Receiver
     _____ Vault Manager/Escrow Agent

## Schedule D
## Coordinates of the Seller

| Bank Name | |
|---|---|
| Address | |
| Account No. | |
| Account Name | |
| SWIFT/ | |
| ABA Routing No | |
| Bank Officer/Tel | |
| | <u>Text Message</u>: *Where large payments are to be delivered by S.W.I.F.T. or Clearstream text message covering all remittances shall clearly state the following:*<br>"CLEAN, CLEARED, LIEN FREE AND UNENCUMBERED FUNDS TO BE HELD FOR SUBSEQUENT DISBURSEMENT AND EARNED BY OR PAYABLE TO BENEFICIARIES ON BANKING AND COMMERCIAL TRANSACTIONS OF NON-CRIMINAL AND NON-TERRORIST ORIGINS, FOR SAME DAY SETTLEMENT."<br><br>Pre-ADVICE OR NOTICE OF PAYMENT SHALL REQUIRE TO BE COPIED to<br><br><u>Name</u> : Brett Regal<br><u>Email</u> |

Initials: *H-N* Buyer
         _BA_ Seller
         ____ Receiver
         ____ Vault Manager/Escrow Agent

Exhibit _A_ Page _24_

## Schedule E=Coordinates of Shadeya International Investments Ltd

| Bank Name | |
|---|---|
| Branch/ | |
| Address | |
| Account No. | |
| Account Name | |
| SWIFT/BIC | |
| IBAN Code | |
| Branch Sort Code | |
| Bank Officer | |
| Tel | |
| | Text Message: *Where large payments are to be delivered by S.W.I.F.T. or Clearstream text message covering all remittances shall clearly state the following:*<br><br>"CLEAN, CLEARED, LIEN FREE AND UNENCUMBERED FUNDS TO BE HELD FOR SUBSEQUENT DISBURSEMENT AND EARNED BY OR PAYABLE TO BENEFICIARIES ON BANKING AND COMMERCIAL TRANSACTIONS OF NON-CRIMINAL AND NON-TERRORIST ORIGINS, FOR SAME DAY SETTLEMENT."<br><br>Pre-ADVICE OR NOTICE OF PAYMENT SHALL REQUIRE TO BE COPIED to |

Initials: *H-N* Buyer
　　　　 *BM* Seller
　　　　 ___ Receiver
　　　　 ___ Vault Manager/Escrow Agent

Initials: *H-N* Buyer
BU Seller
\_\_\_\_Receiver
\_\_\_\_Vault Manager/Escrow Agent