BRAD D. BRIAN (State Bar No. 79001)
brad.brian@mto.com
MATTHEW A. MACDONALD (State Bar No. 255269)
matthew.macdonald@mto.com
ROBYN K. BACON (State Bar No. 251048)
robyn.bacon@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
jennifer.bryant@mto.com
ROWLEY J. RICE (State Bar No. 313737)
rowley.rice@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Intervenor-Defendants
DION TULK and OPHIR COLLECTION, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| STERLING FINANCIAL & REALTY GROUP, INC;<br><br>*Intervenor Plaintiff,*<br><br>v.<br><br>OCEAN THERMAL ENERGY CORPORATION, TRADE BASE SALES, INC., MIGRATION PARTNERS, LLC and BRETT REGAL,<br><br>*Intervenor Defendants,*<br><br>-and-<br><br>DION TULK, OPHIR COLLECTION, LLC, and C. ROBERT COE III,<br><br>*Additional Intervenor Defendants.*<br><br>-and- | Case No. 2:19-cv-05299-VAP-JPR<br><br>**DION TULK AND OPHIR COLLECTION, LLC'S NOTICE OF MOTION AND MOTION TO DISQUALIFY KENNEDY BERG LLP AND FOR SANCTIONS**<br><br>[Declarations of Dion Tulk and Matthew A. Macdonald and [Proposed] Order filed concurrently]<br><br>**Hearing:**<br>Date:    July 20, 2020<br>Time:    2:00 p.m.<br>Place:   Courtroom 8A<br>Judge:   Hon. Virginia A. Phillips |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DION TULK and OPHIR
COLLECTION, LLC,

　　　*Counter- and Cross-Claimants*

　　　　　v.

STERLING FINANCIAL & REALTY
GROUP, INC, OCEAN THERMAL
ENERGY CORPORATION, TRADE
BASE SALES, INC., MIGRATION
PARTNERS, LLC and BRETT
REGAL,

　　　*Counter- and Cross-Defendants.*

**TO THE COURT AND ALL PARTIES AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 20, 2020 at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 8A of this Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant-Intervenors and Counter- and Cross-Complainants Dion Tulk and Ophir Collection, LLC will and hereby do move this Court to disqualify Kennedy Berg LLP ("Kennedy Berg") from any further representation of Sterling Financial & Realty Group, Inc. ("Sterling") and Jeffrey Hackman in the matter, and for the Court to issue monetary sanctions on Kennedy Berg pursuant to the Court's inherent powers.

The ground for this motion is that Kennedy Berg violated California Rule of Professional Conduct 1.18. Kennedy Berg has filed a Complaint in Intervention in this matter on behalf of Sterling asserting claims (including fraud claims) against Tulk. Eleven days before he filed that complaint, James Kennedy, a named partner at Kennedy Berg, had a conversation with Tulk as a prospective client. During that conversation, Kennedy promised Tulk that if Tulk shared information with him, that information would be confidential and protected by attorney-client privilege. He confirmed that promise in writing. In reliance on those promises, Tulk shared certain documents with Kennedy. Kennedy then used those documents to sue Tulk. Kennedy's complaint attached those documents as exhibits and quoted from several of them in order to cast aspersions on Tulk.

Under the Rules of Professional Conduct, it is irrelevant whether the underlying documents were themselves confidential or privileged. An attorney's duty to protect client (or prospective client) confidences is not limited to information that is known only to the client—it extends to *any* information that the client wishes not to have publicly shared. Nor may an attorney use a promise of privilege in order to gain early access to a potential adversary's documents.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place by telephone on May 18, 2020. This Motion is based

1  upon this Notice of Motion, the accompanying Memorandum of Points and

2  Authorities, all cited authorities, all pleadings and papers on file in this action, the

3  concurrently filed declarations of Dion Tulk and Matthew A. Macdonald, and such

4  oral argument and other evidence as the Court shall consider prior to or at the time

5  of hearing on this Motion.

6

7  DATED:  June 16, 2020                    Respectfully submitted,

8                                           MUNGER, TOLLES & OLSON LLP

9

10

11                                          By:  _____*/s/ Matthew A. Macdonald*_____

12                                               MATTHEW A. MACDONALD
                                             Attorneys for Intervenor-Defendants

13                                           DION TULK and OPHIR COLLECTION,
                                             LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DION TULK AND OPHIR COLLECTION, LLC'S MOTION TO DISQUALIFY KENNEDY BERG LLP AND
FOR SANCTIONS

# **TABLE OF CONTENTS**

**Page**

I.     STATEMENT OF FACTS ................................................................. 3

     A.     Factual Background of this Dispute ........................................ 3

     B.     The Receivership Action .......................................................... 4

     C.     Tulk's Communications with Jeffrey Hackman ...................... 5

     D.     Tulk's Communications with James Kennedy ....................... 6

     E.     Sterling's Complaint in Intervention ...................................... 7

     F.     Meet and Confer ...................................................................... 8

II.     LEGAL STANDARD ................................................................... 8

III.    KENNEDY BERG SHOULD BE DISQUALIFIED .......................... 9

     A.     Kennedy Used and Revealed Tulk's Documents in Violation of Rule 1.18(b) ....................................................... 10

     B.     Kennedy's Representation of a Client With Materially Adverse Interests to Tulk Violates Rule 1.18(c) ................... 11

     C.     Kennedy Does Not Qualify for Either Exception in Rule 1.18(d) ....... 14

     D.     Equitable Considerations Weigh in Favor of Disqualification ............. 15

IV.     AT A MINIMUM, KENNEDY SHOULD BE SANCTIONED FOR HIS CONDUCT ................................................................. 17

V.     CONCLUSION ............................................................................ 18

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Damron v. Herzog*,
    67 F.3d 211 (9th Cir. 1995) ..................................................................... 11

*De David v. Alaron Trading Corp.*,
    2012 WL 1429564 (N.D. Ill. Apr. 23, 2012) ......................................... 13

*Erickson v. Newmar Corp.*,
    87 F.3d 298 (9th Cir. 1996) ................................................................. 8, 9

*Exp.-Imp. Bank of Korea v. ASI Corp.*,
    2019 WL 8200603 (C.D. Cal. Jan. 16, 2019) ......................... 9, 12, 13, 16

*Guifu Li v. A Perfect Day Franchise, Inc.*,
    2011 WL 4635176 (N.D. Cal. Oct. 5, 2011) ......................................... 9, 13

*In re Mortg. & Realty Tr.*,
    195 B.R. 740 (Bankr. C.D. Cal. 1996) ..................................................... 10

*Patel v. 7-Eleven, Inc.*,
    2015 WL 9701133 (C.D. Cal. Apr. 14, 2015) ...................................... 9, 17

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................... 9

*SkyBell Techs., Inc. v. Ring, Inc.*,
    2018 WL 6016156 (C.D. Cal. Sept. 18, 2018) .......................... 11, 14, 15, 16

*Terrebonne, Ltd. of California v. Murray*,
    1 F. Supp. 2d 1050 (E.D. Cal. 1998) ......................................................... 8

*UMG Recordings, Inc. v. MySpace, Inc.*,
    526 F. Supp. 2d 1046 (C.D. Cal. 2007) ..................................................... 17

**STATE CASES**

*Clark v. Superior Court*,
    125 Cal. Rptr. 3d 361 (Ct. App. 2011) .............................................. 16, 17

*Elijah W. v. Superior Court*,
    156 Cal. Rptr. 3d 592 (Ct. App. 2013) ..................................................... 10

<u>**TABLE OF AUTHORITIES**</u>
**(Continued)**

<u>**Page**</u>

*Farris v. Fireman's Fund Ins. Co.*,
14 Cal. Rptr. 3d 618 (Ct. App. 2004) ................................................................. 12

*Gregori v. Bank of Am.*,
254 Cal. Rptr. 853 (Ct. App. 1989), *modified* (Feb. 17, 1989) ........................... 11

*In re Johnson*,
2000 WL 1682427 (Cal. Bar Ct. Oct. 26, 2000) ................................................. 11

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
980 P.2d 371 (Cal. 1999) ............................................................................... 15, 16

*Pollock v. Superior Court*,
279 Cal. Rptr. 634 (Ct. App. 1991), *modified* (Apr. 11, 1991) ........................... 17

**STATE STATUTES**

Cal. Bus. & Prof. Code § 6068(e)(1) ................................................................... 10

**STATE RULES**

Cal. Rules Prof. Conduct, Rule 1.6 ...................................................................... 10

Cal. Rules Prof. Conduct, Rule 1.8.2 ................................................................... 18

Cal. Rules Prof. Conduct, Rule 1.9 ...................................................................... 18

Cal. Rules Prof. Conduct, Rule 1.18 ............................................................. 2, passim

Cal. Rules Prof. Conduct, Rule 4.3 ...................................................................... 17

**RULES - OTHER**

L.R. 83-3.1.3 ......................................................................................................... 9

**OTHER AUTHORITIES**

Cal. Bar Formal Ethics Opinion 1993-133 .......................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

The prospect of an attorney-client relationship cannot be deployed as a discovery device.  An attorney cannot promise attorney-client confidentiality to an unrepresented person as a means to extract information, and then use that information to sue them.  Yet that is precisely what happened here.

This receivership action involves competing claims to a collection of rare gemstones called the Ophir Collection (the "Collection").  Dion Tulk owns it.  A prospective purchaser ("Regal") who never paid for the Collection forged numerous documents to claim ownership of the Collection.  Now, Regal's creditors are trying to divide up the Collection to satisfy Regal's purported debts at Tulk's expense.

Kennedy Berg LLP represents one of these creditors.  On March 26, 2020, James Kennedy, a named partner at Kennedy Berg, had a conversation with Tulk to explore the possibility that he could also represent Tulk.  During that conversation, Kennedy promised that any information and documents Tulk shared would be confidential and protected by attorney-client privilege.  He repeated that promise in writing, by text message, at the end of the call:

> Dion,  I appreciate your taking the time to speak.  I look forward to receiving the documentation we discussed, on a confidential basis, so that I can review this under the attorney client privilege, as we explore the prospect that you may retain our firm.  Please send the materials I jkennedy@kennedyberg.com with a copy to jwkennedy@me.com.  Thanks. Jim Kennedy

(Declaration of Dion Tulk ("Tulk Decl.") Ex. 3.)  Shortly after receiving this text, and in reliance on the promise of confidentiality, Tulk sent Kennedy the documents he asked for, including several email exchanges between Tulk and Blake Alsbrook, the successor receiver ("the Receiver").

Eleven days later, Kennedy used these documents to sue Tulk.  Kennedy filed a Complaint in Intervention (the "Complaint") on behalf of Sterling that accused Tulk of fraud and asserted various other claims against him and his company.  The Complaint attached two of Tulk's email exchanges with the Receiver as exhibits and quoted liberally from their contents.  Kennedy used the contents of these emails to twin ends:  to launch attacks on the Receiver and his impartiality, and to cast doubt on Tulk's ownership of the Collection.

Kennedy's actions were an indisputable violation of the California Rules of Professional Conduct.  Under Rule 1.18, "a lawyer who has communicated with a prospective client shall not use or reveal [confidential] information … [that] the lawyer learned as a result of the consultation[.]"  Tulk communicated with Kennedy as a prospective client.  Kennedy learned information from Tulk that Tulk wanted to keep confidential and that Kennedy promised would be kept confidential.  Kennedy then used and revealed that information, and did so in a complaint asserted directly against Tulk.

It is no answer to say that the documents Tulk sent would have been discoverable in later litigation.  Confidentiality is not limited to information that is immune from discovery.  An attorney must also protect information a client has conveyed in confidence and information that would be embarrassing or detrimental to the client if widely known.  Nor is it an answer to say that Tulk was not prejudiced by the disclosure.  Kennedy's heavy reliance on the documents in the Complaint rebuts any suggestion that the disclosure was harmless.

Ultimately, however, our concern is not with the *consequences* of the disclosure but the *means* used to obtain the documents.  Attorney-client

confidentiality is the foundation of the legal profession.  Respecting confidentiality is perhaps an attorney's most sacred obligation.  Promises of confidentiality must be respected, and breaches of those promises should be sanctioned.

The prescribed remedy under Rule 1.18 is disqualification.  We therefore respectfully request an order disqualifying Kennedy and his firm.  While that is a harsh remedy, it is unfortunately appropriate under these circumstances.

# I.      STATEMENT OF FACTS

### A.      Factual Background of this Dispute

This case involves competing claims to the Ophir Collection, a collection of extremely rare and valuable gemstones that Dion Tulk spent years assembling. Many of these gemstones have records as the largest of their kind in the world. (ECF No. 62 ¶¶ 20-21.)  Tulk owns the Collection through his company Ophir Collection, LLC.

Tulk finds himself embroiled in this case because of an ultimately fruitless attempt to sell the Collection to Brett Regal and his company, Trade Base Sales, Inc. (collectively "Regal").  Despite years of assurances that Regal was about to come up with the cash to complete a purchase, Regal never completed the transaction.  (ECF No. 62 ¶¶ 57-76, 107-08.)  Regal, however, created numerous documents purporting to show that he owned the Collection outright.  (ECF No. 62 ¶¶ 34-40.)  Now, Regal and his purported creditors are seeking to sell the Collection and divide the proceeds amongst themselves.  Tulk disputes that Regal or his creditors have any claim to the Collection, and contends that the creditors' claims are based on fraudulent transfers by Regal that cannot be enforced against Tulk.

Complainant in Intervention Sterling Realty and Financial Corporation ("Sterling") is one of these purported creditors.  Sterling is run by Jeffrey Hackman, a Florida businessman who has been permanently enjoined from committing securities violations by the SEC.  (ECF No. 62 ¶ 12.)  Sterling alleges that, in 2017, Regal promised to invest $5 million in Hackman's litigation funding business.

1  (ECF No. 40 ¶¶ 17, 52.)  But Regal did not have $5 million, and so he could not

2  make good on the promise.  (ECF No. 40 ¶ 52.)  Hackman and Sterling—apparently

3  aware that Regal was insolvent and desperate to avoid bankruptcy—managed,

4  through a series of sham transactions, to parlay that empty promise into a $9.75

5  million stipulated judgment and purported security interest in Tulk's Collection.

6  (ECF No. 62 ¶ 100.)  Tulk believes, and intends to prove at trial, that all or

7  substantially all of Regal's debts to Sterling are the result of fraudulent transfers and

8  that Hackman and Sterling knew all along that there were problems with Regal's

9  claim to own the Collection.  (ECF No. 62 ¶¶ 116-19.)

10  **B.  The Receivership Action**

11  Regal's other purported creditor—Ocean Thermal Energy Corporation

12  ("OTEC")—initiated this receivership action in June 2019.  (*See* ECF No. 4.)

13  OTEC claims Regal breached a promise to invest more than $40 million—money

14  Regal did not have—in a speculative renewable energy investment company.  (*See*

15  ECF No. 4-8 ¶¶ 9, 17-19, 40-44.)  OTEC initially resolved its breach of contract

16  claim against Regal for $3 million, but has since turned that $3 million settlement

17  into a purported $25 million-plus claim.  (ECF Nos. 4-6, 4-11, 4-12.)

18  OTEC's receivership application proposed that a receiver be appointed to (i)

19  sell the Collection for not less than $120 million, (ii) pay OTEC for its claimed

20  debts, and (iii) then distribute the rest to Regal.  (ECF No. 4, 4-6.)

21  Neither the receivership application nor Regal's affidavit in support of that

22  application made any mention of the fact that Regal had not paid for the Collection

23  or that Tulk had a claim.  (*See* ECF No. 4, 4-1.)  Tulk was not notified of the

24  receivership, and instead learned about it by chance months after it had been filed.

25  (Tulk Decl. ¶ 3.)

26  On February 10, 2020, Sterling moved for leave to file a complaint in

27  intervention.  (ECF No. 26.)  The proposed complaint raised claims against OTEC

28  and Regal (and his affiliated companies) and sought a judgment demanding, among

DION TULK AND OPHIR COLLECTION, LLC'S MOTION TO DISQUALIFY KENNEDY BERG LLP AND
FOR SANCTIONS

other things, that Sterling be paid in full for its $9.75 million stipulated judgment, plus interest and attorney's fees, before any other party recovered any sale proceeds. (ECF No. 26-2 ¶ 102.)

Shortly thereafter, Tulk contacted Blake Alsbrook, the Receiver, to assert his claim to the Collection. During these discussions, Alsbrook noted that Regal and OTEC "agree[d] to put [Tulk] first in line" for payment. (ECF No. 40-16.) Alsbrook also noted that he had not yet reached out to Sterling's counsel "because of some difficult early conversations." (*Id.*)

### C. Tulk's Communications with Jeffrey Hackman

On March 25, 2020, Tulk reached out to Hackman by email in an attempt to dissuade Hackman from filing the Complaint. (Tulk Decl. Ex. 1.) Tulk wrote that he owned the Collection, that he had not been paid for the Collection, and that Regal had committed fraud. (*Id.*) Tulk explained that if Hackman filed his Complaint, Tulk would be forced to file a claim as well, a result that might work to the detriment of all. (*Id.*)

Tulk and Hackman then had a phone conversation. (Tulk Decl. ¶ 6.) During that conversation, Tulk told Hackman that the Receiver agreed that Tulk had a valid claim, and that OTEC and Regal had agreed to put Tulk first in line for payment. (*Id.*) Hackman asked Tulk to send him evidence supporting his claim, as well as his correspondence with the Receiver. (*Id.* ¶ 7.) Tulk said he did not feel comfortable sharing these documents with Hackman given the potential adversity between them. (*Id.*) For the same reasons, Tulk did not discuss his emails with the Receiver in detail with Hackman. (*Id.* ¶¶ 6-7.)

Hackman then proposed a workaround. He asked if Tulk had an attorney in this case; Tulk confirmed he did not. (*Id.* ¶ 8.) Hackman suggested that Tulk retain Hackman's lawyer, James Kennedy, to represent him. (*Id.*) Kennedy was already knowledgeable about issues surrounding the Collection, and if Tulk retained him, Tulk could send him information confidentially and under privilege. (*Id.*) Tulk said

DION TULK AND OPHIR COLLECTION, LLC'S MOTION TO DISQUALIFY KENNEDY BERG LLP AND FOR SANCTIONS

that he was open to this idea, as he was hoping to reduce the costs and burdens of litigation. (*Id.*) Shortly after, Hackman sent Kennedy's contact information to Tulk, and Tulk agreed to speak to him. (*Id.* ¶ 9; Tulk Decl. Ex. 2.)

### D.     Tulk's Communications with James Kennedy

The next day, Kennedy and Tulk spoke for the first time for approximately 30 minutes. (Tulk Decl. ¶ 10.) Kennedy and Tulk appear to have very different recollections of what transpired on that call.

***Tulk's Account.*** Tulk believed that the purpose of the call was to explore a potential representation. (Tulk Decl. ¶ 10.) When giving Kennedy an overview of his claim to the Collection, Tulk spoke openly and honestly. (*Id.*) Kennedy asked Tulk to send him documents, including his emails with the Receiver. (*Id.* ¶¶ 11-12) Tulk expressed reservations about sending documents—he was concerned about his potential adversity with Hackman and did not want to jeopardize his relationship with the Receiver by publicizing their communications. (*Id.* ¶ 12.) Kennedy assured Tulk that, since Tulk was considering retaining him, their communications would be confidential and protected under attorney-client privilege, and that Kennedy would not share the communications with Hackman. (*Id.*) Tulk asked for the confidentiality commitment in writing, which he got by text message at the end of the call.

***Kennedy's Account.*** As Kennedy has declined to provide us with a complete account of what happened on the call, we can only speculate as to what he will tell the Court about his discussion with Tulk. (*See* Declaration of Matthew A. Macdonald ("Macdonald Decl.") Ex. B at 10; Macdonald Decl. ¶ 3.) As we understand Kennedy's account, he was not having a conversation with Tulk "as a prospective client," but for the purpose of fulfilling his "ethical duty" to investigate the "factual and legal basis" of Tulk's claims. (Macdonald Decl. Ex. B at 11, 13, 20.) We understand that Kennedy acknowledges that the topic of a potential

1   representation was discussed on the call.  But he has declined to say exactly what

2   was said about privilege and confidentiality.  (Macdonald Decl. ¶ 3.)

3       ***The Text Message.***  Regardless of the narrative Kennedy provides of what he

4   discussed on his call with Tulk, one thing is clear.  Shortly after the call ended,

5   Kennedy sent Tulk a text message promising that any "documentation"[1] Tulk sent

6   would be "confidential" and "under the attorney client privilege."   (Tulk Decl.

7   Ex. 3.)

8       In the hours after Tulk received the text, Tulk sent Kennedy two emails

9   attaching seven documents, and forwarded five email threads with the Receiver

10   attaching eight more documents.  (Tulk Decl. ¶ 14.)  Two days later, Kennedy

11   confirmed he had read Tulk's materials and "ha[d] a grasp on what has happened."

12   (Tulk Decl. Ex. 4.[2])

13       **E.     Sterling's Complaint in Intervention**

14       Eleven days after Tulk sent him documents, Kennedy filed a lawsuit against

15   Tulk that asserted six different causes of action, including a claim for fraud. (ECF

16   No. 40.)  The Complaint not only attached Tulk's emails with the Receiver, it

17   quoted them at length.  Curiously, unlike other emails attached as exhibits to the

18   Complaint, which appear to be printed without modification, the emails between

19   Tulk and the Receiver appear to have been copied and pasted into separate

20   documents such that the source of the emails is omitted.  (*Compare* ECF Nos. 40-

21   13, 40-14 *with* 40-15, 40-16.)

22

23

24   _____

25   [1] In subsequent meet and confer correspondence, Kennedy claimed that "the
    documentation we discussed" did not refer to Tulk's emails with the Receiver but to

26   some other documentation that he claims Tulk never sent.  (Macdonald Decl. Ex. B
    at 10, 13.)

27

28   [2] The first email in this chain has been redacted for privilege.  (*See* Macdonald Decl.
    ¶ 6.)

Sterling uses the emails to attack the Receiver and call into question Tulk's ownership of the Collection.  Sterling discusses the emails in twelve paragraphs in the Complaint, and directly quotes them *nine times*.  (*See* ECF No. 40 ¶¶ 7-9, 23, 28-29, 162-67.)  Sterling cites the emails as proof that the Receiver had been "secretly communicating" with Tulk "behind Sterling's back," that this demonstrates a "bias" against Sterling, and that the Receiver should be removed because of it.  (*Id.* ¶¶ 28-29, 167.)  Sterling also cites the emails to suggest that Tulk's claim to the Collection is contradicted by documents, and relies on them to argue that Tulk's claim should not have priority over Sterling's.  (*Id.* ¶¶ 8-9.)

### F.    Meet and Confer

On May 6, 2020, Tulk's counsel sent Kennedy a letter expressing concerns about Kennedy's communications with Tulk and requesting a conference to discuss why Kennedy should not be disqualified.[3]  The parties subsequently engaged in meet and confer correspondence and a telephonic conference on May 18, but were unable to resolve the dispute.  A copy of the parties' meet and confer correspondence is attached as Exhibits A and B to the Declaration of Matthew A. Macdonald.

## II.    LEGAL STANDARD

"The district court has the duty and responsibility to supervise the conduct of attorneys who appear before it."  *Terrebonne, Ltd. of California v. Murray*, 1 F. Supp. 2d 1050, 1054 (E.D. Cal. 1998); *see Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) (finding district court that failed to address ethical violations

---

[3] Shortly after Tulk's counsel raised concerns about Kennedy's communications with Tulk, Sterling filed an amended complaint that included new allegations about Tulk and Hackman's correspondence, including that Tulk allegedly "detailed his email communications with the Successor Receiver" to Hackman.  (ECF No. 55 ¶¶ 8-10.)  Like the original complaint, the amended complaint makes no reference to Kennedy's communications with Tulk, and omits the source information from the Receiver's emails attached as exhibits.  (*See* ECF No. 55-15, 55-16.)

"abdicated its duty"). District courts have "an arsenal of sanctions" at their disposal to address unethical behavior, including disqualification. *Erickson*, 87 F.3d at 303; *see also* L.R. 83-3.1.3. To maintain ethical standards of professional responsibility, courts "must assess a sanction . . . that actually punishes counsel for its ethical wrongdoing." *Patel v. 7-Eleven, Inc.*, No. CV1400519PSGDTBX, 2015 WL 9701133, at *7 (C.D. Cal. Apr. 14, 2015).

In the Ninth Circuit, state law governs motions to disqualify. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Federal courts apply California law when determining whether an attorney has violated ethical rules. *See Guifu Li v. A Perfect Day Franchise, Inc.*, No. 11-CV-01189-LHK, 2011 WL 4635176, at *3 (N.D. Cal. Oct. 5, 2011).

## III. KENNEDY BERG SHOULD BE DISQUALIFIED

Even under Kennedy's version of events, his conduct clearly violated California's ethical rules. Kennedy acknowledges that he and Tulk discussed a potential representation, and so Tulk was indisputably a prospective client under California law. *See* Cal. Rules Prof. Conduct, rule 1.18(a). Rule 1.18 sets forth duties that lawyers owe prospective clients, including the duty not to "use or reveal" confidential information, and the duty not to represent another client with materially adverse interests. *See* Cal. Rules Prof. Conduct, rule 1.18(b)-(c). These rules are designed to "maintain confidence in the legal system." *Exp.-Imp. Bank of Korea v. ASI Corp.*, No. CV162056MWFJPRX, 2019 WL 8200603, at *2 (C.D. Cal. Jan. 16, 2019). For the good of the court, parties, and prospective clients, Rule 1.18 establishes a clear standard that allows a lawyer to use a prospective client's confidential information only if the lawyer obtains client consent, and allows a law firm to switch sides only if it "jumps through a number of precisely positioned hoops." *Exp.-Imp. Bank of Korea*, 2019 WL 8200603, at *2. Kennedy and his firm failed to meet this standard and must therefore be disqualified.

### A.   Kennedy Used and Revealed Tulk's Documents in Violation of Rule 1.18(b)

Attorneys must not reveal information conveyed to them in confidence by a prospective client.  *See* Cal. Rules Prof. Conduct, rule 1.18(b); Cal. Bus. & Prof. Code § 6068(e)(1) ("It is the duty of an attorney . . . to maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."); Cal. Rules Prof. Conduct, rule 1.6, cmt. 2 ("The principle of lawyer-client confidentiality applies to information a lawyer acquires by virtue of the representation, whatever its source, and encompasses matters communicated in confidence by the client . . .").  This duty of confidentiality sweeps broadly, encompassing "any information obtained by the lawyer during the professional relationship, or relating to the representation, which the client has requested to be inviolate or the disclosure of which might be embarrassing or detrimental to the client."  Macdonald Decl. Ex. C [Cal. Bar Formal Ethics Opinion 1993-133]; *In re Mortg. & Realty Tr.*, 195 B.R. 740, 752 n.12 (Bankr. C.D. Cal. 1996).

Here, the context in which Tulk sent documents to Kennedy makes clear that Tulk conveyed the documents in confidence.  Kennedy asked Tulk to send him documents; Tulk expressed concerns about doing so.  Kennedy then promised Tulk that he could send documents confidentially.  In reliance on this promise, Tulk sent Kennedy documents that he otherwise would not have sent.  Lest there be any doubt, Sterling's use of Tulk's emails with the Receiver to cast doubt on Tulk's claim shows that they are documents that could be used to the detriment of a client—the exact type of documents the duty of confidentiality is meant to protect.

It is no answer to say that the documents at issue are communications with third parties.  Unlike attorney-client privilege (an evidentiary privilege protecting communications between an attorney and client), an attorney's duty of confidentiality "protects virtually everything the lawyer knows about the client's matter regardless of the source of the information."  *Elijah W. v. Superior Court*,

156 Cal. Rptr. 3d 592, 599 (Ct. App. 2013).  An "integral purpose" of this duty is to "encourage clients to fully and freely disclose to their attorneys all facts pertinent to their cause *with absolute assurance that such information will not be used to their disadvantage*."  *Damron v. Herzog*, 67 F.3d 211, 215 (9th Cir. 1995) (emphasis added).  Consistent with this purpose, courts have rejected arguments that information conveyed in confidence by a client loses its protected status if it is discoverable or publicly available.  *See SkyBell Techs., Inc. v. Ring, Inc.*, No. SACV1800014JVSJDEX, 2018 WL 6016156, at *6 (C.D. Cal. Sept. 18, 2018) (rejecting argument that client documents conveyed in confidence were not confidential because they had become public or would be discoverable); *In re Johnson*, No. 96-O-05705, 2000 WL 1682427, at *10 (Cal. Bar Ct. Oct. 26, 2000) (finding attorney's disclosure of client's status as a felon violated the duty of confidentiality, despite the fact that the information was part of the public record). That some of the emails at issue were with a third party is immaterial; what matters is that they were documents conveyed in confidence by a prospective client who was seeking representation.

Having received client confidences as a result of a consultation with a prospective client, Kennedy was prohibited from "us[ing] or reveal[ing]" that information.  Cal. Rules Prof. Conduct, rule 1.18(b).  Kennedy's exploitation of the documents to Sterling's advantage is more than enough to justify disqualification. *See Gregori v. Bank of Am.*, 254 Cal. Rptr. 853, 865 (Ct. App. 1989), *modified* (Feb. 17, 1989) (noting disqualification is proper where counsel has acquired information "through improper means" that could be "used advantageously against an adverse party").

### B.   Kennedy's Representation of a Client With Materially Adverse Interests to Tulk Violates Rule 1.18(c)

An attorney who acquires a prospective client's confidences or secrets is not only prohibited from using that information—the attorney is also prohibited from

representing adverse clients.  Where a prospective client has divulged material confidential information to an attorney, that attorney "shall not" represent a client with interests "materially adverse" to those of the prospective client in the same or substantially related matter.  Cal. Rules Prof. Conduct, rule 1.18(c).  Here, Tulk consulted Kennedy regarding his claim to the Collection in this litigation, a matter in which Sterling and Hackman's interests are clearly adverse to Tulk's.  Rule 1.18(c) mandates Kennedy's disqualification to the extent Tulk divulged "material" confidential information.

While courts have not defined the threshold for materiality under Rule 1.18, what is clear is that information need not be "significantly harmful" to a prospective client to be material.  *Exp.-Imp. Bank of Korea*, 2019 WL 8200603, at \*7 (noting California declined to adopt the ABA Model Rule's "significantly harmful" standard for materiality).  For example, the court in *Exp.-Imp. Bank of Korea* found a five-page request for proposal cleared the bar for materiality since it contained information the prospective client considered confidential and "important" to the litigation, and reflected the client's understanding of the case at the time, including potential claims that were not yet public, the role of other parties in alleged fraud, and potential legal strategies.  *Id.* at \*8; *accord Farris v. Fireman's Fund Ins. Co.*, 14 Cal. Rptr. 3d 618, 623 (Ct. App. 2004) (applying pre-Rule 1.18 law and finding information to be material when it is "directly at issue in" or "ha[s] some critical importance to" the litigation).

The documents are not the only issue.  Here, Kennedy and Tulk had a long, candid conversation about the case and his claim, a conversation he never would have had with a lawyer he thought was planning on suing him.  (Tulk Decl. ¶ 10.) Though we do not know how this conversation might impact the litigation, this type of consultation, where a prospective client believes he is having a protected conversation with a potential lawyer, is a context in which confidential information material to the dispute would "normally [be] imparted" to an attorney.  *Guifu Li*,

2011 WL 4635176, at *4. This type of unguarded conversation between a prospective client and an attorney is sufficient on its own to justify disqualification. *See id.* (disqualifying attorney who used information from a preliminary consultation against his former prospective client, where the contacts between the attorney and client were "such that confidential information normally would have been imparted to the attorney").

Regardless, the documents Tulk sent to Kennedy are material by any measure. As an initial matter, Tulk did not just send Kennedy the two documents Kennedy attached to the Complaint—he also sent documents that laid out his claim to the Collection and substantiated his allegations of fraud. (Tulk Decl. ¶ 14.) Like the document in *Exp.-Imp. Bank of Korea*, these documents set forth Tulk's understanding of his case and the basis for potential claims he was contemplating filing, and are therefore material.

Tulk's emails with the Receiver are also material, as shown by Kennedy's extensive use of them in Sterling's Complaint. Sterling is seeking to remove the Receiver because Sterling claims the Receiver has "unfairly prejudice[d]" them. (ECF No. 40 ¶ 159.) This alleged prejudice stems in large part from the Receiver's communications with Tulk. (*See* ECF No. 40 ¶¶ 158-59.) Sterling claims that the Receiver is biased because he assured that Tulk would be first in line to sale proceeds "notwithstanding certain reservations [the Receiver] supposedly ha[s] about [Tulk's] claim of purported ownership of the Ophir Collection[.]" (ECF No. 40 ¶ 158) The proof of these "reservations" is an email between Tulk and the Receiver (one of the emails Tulk shared with Kennedy because Kennedy told him he could do so confidentially). (*See* ECF No. 40 ¶¶ 162-64.) As Sterling is using Tulk's emails in an attempt to remove the Receiver, Sterling cannot now claim that the emails are immaterial to this case. *Accord De David v. Alaron Trading Corp.*, No. 10CV3502, 2012 WL 1429564, at *3 (N.D. Ill. Apr. 23, 2012) (finding

1   information to be material where the information placed a lawyer "in a position to
2   unfairly advantage his current clients").

3       Because Tulk provided material confidential information to Kennedy related
4   to this very matter, Kennedy is prohibited from representing Tulk's litigation
5   opponent in this matter.  He and his firm, Kennedy Berg, must be disqualified under
6   Rule 1.18(c).

7       **C.     Kennedy Does Not Qualify for Either Exception in Rule 1.18(d)**

8       Having received material confidential information from Tulk, Kennedy and
9   his firm must be disqualified unless Kennedy and the firm qualify for one of the
10  narrow exceptions set forth in Rule 1.18(d).  They qualify for neither.

11      First, a lawyer can avoid disqualification if the former prospective client gave
12  informed written consent to the lawyer representing an adverse party.  Cal. Rules
13  Prof. Conduct, rule 1.18(d)(1).  As Tulk has not consented (Tulk Decl. ¶ 17), this
14  exception does not apply.

15      Second, a law firm can avoid disqualification if the lawyer who received the
16  prospective client's confidential information took "reasonable[] measures to avoid
17  exposure to more information than was reasonably[] necessary to determine whether
18  to represent the prospective client[.]"  Cal. Rules Prof. Conduct, rule 1.18(d)(2).
19  This requires that the lawyer take "some type of affirmative step or act to limit or
20  avoid exposure to more information than is necessary."  *SkyBell*, 2018 WL 6016156,
21  at *7.  Only if the lawyer has taken these steps may the law firm represent the
22  adverse party—and even then only if the firm promptly screens the affected lawyer
23  and provides written notice of the adverse representation to the former prospective
24  client.  Cal. Rules Prof. Conduct, rule 1.18(d)(2).

25      Here, Kennedy made no effort whatsoever to limit the information he
26  obtained from Tulk.  He did the opposite.  By assuring Tulk that he could send him
27  information "on a confidential basis" and "under the attorney client privilege,"
28  Kennedy actively *encouraged* Tulk to send him documents and information that

DION TULK AND OPHIR COLLECTION, LLC'S MOTION TO DISQUALIFY KENNEDY BERG LLP AND
FOR SANCTIONS

would trigger his duties under Rule 1.18.  This isn't a tortured interpretation of Kennedy's words—it is literally what he said.  (*See* Tulk Decl. Ex. 3.)

Because Kennedy was exposed to Tulk's material confidential information, Kennedy Berg can only continue representing Sterling and Hackman if it screened Kennedy from the case in a timely manner and notified Tulk in writing.  They did not.  None of the exceptions to disqualification under Rule 1.18 apply.

### D.   Equitable Considerations Weigh in Favor of Disqualification

Despite Kennedy's contention to the contrary, Sterling and Hackman's right to the counsel of their choice does not absolve Kennedy's conduct.  Rule 1.18 already accounts for current clients' interests in retaining the counsel of their choice. *See* Macdonald Decl. Ex. D [Exec. Summ. For Rule 1.18] at 2 (Rule 1.18 gives lawyers "a clearly-articulated standard on how to comport themselves during a consultation to protect not only the prospective client *but also to protect current clients from losing the lawyer of their choice*, thus enhancing public protection and confidence in the legal profession" (emphasis added)).  To protect current clients' interests, Rule 1.18 puts the impetus on *lawyers* to take affirmative steps to avoid potential disqualifying conflicts.  *SkyBell*, 2018 WL 6016156, at *7 ("The Rule explicitly contemplates that the attorney take some type of affirmative step or act to limit or avoid exposure to more information than is necessary.").

This balance reflects a principle the California Supreme Court has made clear: when public trust in the integrity of the bar is at issue, "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process."  *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371, 378 (Cal. 1999).  Protecting the confidentiality of communications between attorney and client is a principle "fundamental to our legal system."  *Id.*  When client confidences have been or are at risk of being betrayed, disqualification is warranted to uphold public trust in the attorney-client relationship.

DION TULK AND OPHIR COLLECTION, LLC'S MOTION TO DISQUALIFY KENNEDY BERG LLP AND FOR SANCTIONS

1    Likewise, whether Tulk suffered prejudice is immaterial.  The *Exp.-Imp. Bank*
2    *of Korea* court flatly rejected the argument that prejudice matters.  *Exp.-Imp. Bank*
3    *of Korea*, 2019 WL 8200603, at *2 ("The issue here is not whether [the disqualified
4    lawyer] has received or would receive any information to the detriment of [the
5    former prospective client]. That obviously has not happened, but that's not what
6    matters.").  The *SkyBell* court also implicitly rejected this argument, finding that
7    disqualification was warranted even though the information divulged could be
8    obtained through discovery or by searching public records.  2018 WL 6016156, at
9    *6.

10    Regardless, whether Tulk will suffer future prejudice is of little consequence
11    when the damage has already been done.  Kennedy has already made two of Tulk's
12    emails public, and has used them to impugn the fairness of the Receiver in direct
13    response to the Receiver's treatment of Tulk's claim.  While disqualifying Kennedy
14    cannot unring that bell, letting him off the hook due to a lack of future prejudice
15    would set a perverse precedent and erode public trust in the judicial process.  On a
16    fundamental level, confidence in the attorney-client relationship cannot be
17    maintained if lawyers are free to betray confidences when the client or prospective
18    client cannot show prejudice.

19    This is why the question of disqualification has always "involve[d] more than
20    just the interests of the parties"—it involves the interests of the public.  *SpeeDee*
21    *Oil*, 980 P.2d at 378.  When considering whether counsel should be disqualified,
22    "[t]he paramount concern must be to preserve public trust in the scrupulous
23    administration of justice and the integrity of the bar."  *Id.*  Accordingly,
24    disqualification is warranted where an attorney's continuation in a case could
25    "trigger doubts over the integrity of the judicial process."  *Clark v. Superior Court*,
26    125 Cal. Rptr. 3d 361, 375 (Ct. App. 2011).  Allowing an attorney to remain in a
27    case after improperly accessing another party's confidential or privileged material is
28    precisely the type of misconduct that erodes public confidence in the integrity of the

DION TULK AND OPHIR COLLECTION, LLC'S MOTION TO DISQUALIFY KENNEDY BERG LLP AND
FOR SANCTIONS

legal system. *See id.* (affirming disqualification based on attorney's improper review of privileged documents because the "inevitable questions" about how the attorney learned certain facts could undermine public trust in the justice system).

Given the paramount importance of maintaining public confidence in the integrity of the judicial process, the Court should disqualify Kennedy and his firm.

## IV.   AT A MINIMUM, KENNEDY SHOULD BE SANCTIONED FOR HIS CONDUCT

If this Court were to find disqualification is too harsh a penalty to impose in this case, Kennedy Berg should still be sanctioned. Courts have "broad" discretion to craft appropriate relief to punish or deter attorney misconduct. *UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d 1046, 1062-63 (C.D. Cal. 2007); *see Patel*, 2015 WL 9701133, at *7 (considering whether a sanction short of disqualification would effectively punish counsel for their ethical wrongdoing). Court-imposed sanctions provide "a relatively swift mechanism for redressing careless, slick, underhanded, or tacky conduct." *Pollock v. Superior Court*, 279 Cal. Rptr. 634, 636 (Ct. App. 1991), *modified* (Apr. 11, 1991).

There were many simple precautions Kennedy could have taken that would have avoided this conflict and protected all parties involved. He should have warned Tulk that he represented Sterling, not Tulk, and that their communications were neither confidential nor privileged. *See* Cal. Rules Prof. Conduct, rule 4.3(a) (a lawyer who knows or reasonably should know that an unrepresented person incorrectly believes the lawyer is disinterested must "make reasonable[] efforts to correct the misunderstanding"). He should have told Tulk not to send him anything confidential unless and until he had evaluated the conflict, or both Sterling and Tulk had waived the conflict. *See* Cal. Rules Prof. Conduct, rule 1.18(d). He should have asked Tulk to acknowledge, in writing, that anything he sent to Kennedy could be used against him, and that Kennedy could continue representing Sterling and

Hackman, regardless of what Tulk told or sent him.  *See* Cal. Rules Prof. Conduct rules 1.18(a), 1.9(c), 1.8.2.

Kennedy did none of this.  Instead, he promised Tulk, an unrepresented adverse party, confidentiality and a privilege that he had no intention of upholding. In so doing, he induced Tulk to send documents that Tulk otherwise would not have shared.

Lawyers who play fast and loose with confidentiality and privilege undermine the trust that is foundational to our legal system.  As wardens of the law's ethical standards, courts should not allow such conduct to go unpunished.  At a minimum, this Court should sanction Kennedy for his breaches of confidentiality and privilege.

## V.    CONCLUSION

For the foregoing reasons, Kennedy should be disqualified from representing Sterling and Hackman in this matter and sanctioned.


DATED:  June 16, 2020                    MUNGER, TOLLES & OLSON LLP



By:  _____/s/ Matthew A. Macdonald_____
        MATTHEW A. MACDONALD
        Attorneys for Intervenor-Defendants
        DION TULK and OPHIR COLLECTION, LLC